Andrew W. Stavros (8615)
**STAVROS LAW P.C.**
8915 South 700 East, Suite 202
Sandy, Utah 84070
Tel: (801) 758-7604
Fax: (801) 893-3573
andy@stavroslaw.com

*Attorney for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| RANDY T. CHAPPELL, an individual,<br><br>Plaintiff,<br><br>vs.<br><br>SKYWEST AIRLINES, INC., a Utah corporation, MARK RICHARD, an individual, JUSTIN REBER, an individual, and TODD EMERSON, an individual,<br><br>Defendants. | **COMPLAINT**<br><br>**(Jury Demand)**<br><br><br>Case No.<br><br>Judge: |

Plaintiff, Randy Chappell ("Plaintiff" or "Chappell"), by and through his counsel of record, hereby submits this Complaint against Defendants SkyWest Airlines, Inc. ("Defendant" or "SkyWest"), Mark Richard, Justin Reber, and Todd Emerson (collectively, "Defendants"), and for causes of action alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. At all times relevant to this Complaint, Plaintiff Randy Chappell was a resident of the State of Utah.

2. At all times relevant to this Complaint, Plaintiff was an employee of SkyWest.

1

3. Defendant SkyWest is a Utah corporation doing business in Washington County, state of Utah, with its principal place of business located at 444 South River Road, St. George, Utah, 84790.

4. At all times relevant to this Complaint, SkyWest was an employer (or covered entity, as applicable) as defined by the ADA, 42 U.S.C. § 12111(5), as well as an employer under the federal claims set forth herein.

5. Defendant Mark Richard is an individual who resides in Washington County, state of Utah. At all times relevant hereto, Richard worked as an employee of SkyWest.

6. Defendant Justin Reber, on information and belief, is an individual who resides in Utah. At all times relevant hereto, Reber worked as an employee of SkyWest.

7. Defendant Todd Emerson, on information and belief, is an individual who resides in Utah. At all times relevant hereto, Reber worked as an employee of SkyWest.

8. Jurisdiction is proper before this Court pursuant to 28 U.S.C. § 1343(a)(4) in that this Complaint asserts various causes of action under federal law, as more fully set forth herein.

9. Venue is proper before this Court (Central Division, Southern Region) pursuant to 28 U.S.C. § 1391(b), insofar as the claims arose in Washington County, Utah, SkyWest employed Chappell in Washington County, Utah, the individual defendants worked in Washington County, Utah, and the records relating to the employment referenced herein were kept in Washington County, Utah.

10. Chappell timely filed a charge of discrimination with the Utah Labor Commission, Antidiscrimination and Labor Division ("UALD") and Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on disability and age, and

retaliation for opposing the discrimination, and received a Notice of Right to Sue from the EEOC dated June 14, 2021.

11. This action is brought within ninety (90) days of Chappell's receipt of the Notice of Right to Sue from the EEOC.

12. Accordingly, all exhaustion requirements have been satisfied by Chappell.

## FACTUAL BACKGROUND

13. Chappell was hired by SkyWest as a Pilot on or about April 16, 1990. Chappell was later promoted to a Captain position with SkyWest.

14. Chappell is over the age of forty (40) and has a son who is disabled within the meaning of the Americans with Disabilities Act, as amended ("ADA"). See 42 U.S.C. § 12102(1).

15. Chappell's son was diagnosed with a condition that limits his major life activities and major bodily functions, in that it impacts his circulatory and cardiovascular systems.

16. At a young age, Chappell's son was diagnosed with chronic diabetes. He is forced to take costly daily medications to constantly monitor the symptoms of his disability, as well as have regular visits with a medical provider and other necessary forms of treatment.

17. As a part of Chappell's employment with SkyWest, he was offered group health plan benefits for his family and SkyWest was responsible to pay for most if not all the costs associated with health benefits used by Chappell and/or his family, subject to the payment of co-pays and deductibles.

18. Accordingly, as a part of the group health plan, SkyWest covered the costs associated with the diabetic medications Chappell's son required, as well as any medical claims for services rendered due to his son's condition.

19. Shortly after Chappell's termination, but while still covered by SkyWest's health plan, Chappell's wife was hospitalized resulting in a claim of approximately $26,000.00, which SkyWest failed to cover.

20. Based on the foregoing, SkyWest took adverse actions against Chappell to remove him for their health coverage because he exercised his right to the health benefits he was offered and eligible for by SkyWest, including benefits for his family.

21. The adverse actions include, but are not limited to, subjecting him to an unwarranted investigation and terminating him from his position.

22. Chappell is also over the age of forty (40) and is a protected individual within the meaning of the Age Discrimination in Employment Act of 1967 ("ADEA"). See, 29 U.S.C. § 631(a).

23. Chappell worked for SkyWest for approximately thirty (30) years and had an impeccable work history and performance record while employed.

24. Specifically, Chappell never received any disciplinary actions throughout his employment and was regularly commended for his performance, regularly exceeded expectations, and worked tirelessly to ensure passenger safety.

25. As a Captain, Chappell was not required to personally inspect aircrafts; that duty was delegated to the First Officer pursuant to SkyWest procedures and practices.

26. Chappell flew, captained, maintained, and ensured the safety of hundreds if not thousands of flights, without incident, throughout his employment with SkyWest.

27. Despite his exemplary record, in or about March 2020, Chappell was subjected to false allegations and differential treatment which ultimately resulted in his termination.

28. On or about March 24, 2020, Chappell was conducting a routine flight with First Officer, Justin Reber.

29. Unbeknownst to Chappell, part of the aircraft rolled off the road leading to the runway and onto gravel prior to take-off (the "Occurrence").

30. The ground crew is to alert the pilot/captain of any impending dangers and/or obstacles that the aircraft may encounter. However, during the Occurrence the ground crew and other personnel failed to alert or inform Chappell or First Officer Reber of any hazards, or of the fact that part of the aircraft had rolled through gravel.

31. If there is an Occurrence, ground crew are required to alert the pilots of the Occurrence and/or contact flight control; here, they did neither.

32. In fact, Chappell was not made aware of the Occurrence until the following day when he was contacted by Mark Richard, Chief Pilot for SkyWest.

33. As a result of the Occurrence, Chappell was subjected to investigation by both SkyWest and the Federal Aviation Administration ("FAA"). Following its investigation, the FAA cleared Plaintiff and First Officer Reber of any wrongdoing. However, Chappell was terminated by SkyWest on April 24, 2020.

34. Chappell and First Officer Reber both filed independent Incident Occurrence Reports ("IORs"), which both indicated that neither pilot was aware of any irregularity during the flight that occurred on March 24, 2020.

35. According to text messages from First Officer Reber to Plaintiff only two days after the Occurrence, Reber informed Plaintiff that Chief Pilot Richard had informed First Officer Reber not to discuss the matter with Chappell. Chief Pilot Richard had no communication with Chappell at this time.

36. As a part of SkyWest's policies, each person involved in an investigation should be interviewed by separate Review Boards, however, both Chappell and First Officer Reber were given the same Review Board.

37. On information and belief, during the investigative process, First Officer Reber met extensively with Chief Pilot Richard and SkyWest's in-house counsel, Todd Emerson, to discuss the Occurrence and his testimony before the Review Board.

38. The Review Board interviewed both First Officer Reber and Chappell and found that Chappell was cleared of any wrongdoing.

39. Agent Charles Reed from the FAA was also assigned to investigate the Occurrence.

40. Agent Reed individually interviewed Chappell and First Officer Reber. Chappell and First Officer Reber's statements were nearly identical, and Reed concluded that Chappell had engaged in no wrongdoing.

41. As a result, Chappell was reinstated as an employee of SkyWest on or about June 16, 2020.

42. Based upon Agent Reed's findings, the SkyWest ground crew was responsible for the Occurrence as they did not immediately notify the pilots of the Occurrence, which endangered the flight crew, passengers, and the aircraft – which was leased by Delta Airlines, thus further clearing Chappell from any wrongdoing.

43. On information and belief, despite Chappell being cleared of any wrongdoing by both the Review Board and the FAA, First Officer Reber continued consulting at length with Chief Pilot Richard and Mr. Emerson.

44. Shortly thereafter, First Officer Reber testified before the Review Board and changed his recount of the occurrence. Contrary to his IOR and prior statements to both the Review Board and the FAA, First Officer Reber claimed that Chappell was aware of the Occurrence but chose to ignore it, placing the lives of himself, First Officer Reber, the flight crew and passengers in danger.

45. Chappell was then interviewed a second time by the Review Board, and during the interview Chappell was played a recording of First Officer Reber's revised statement.

46. After listening to the recording and being acquaintances with First Officer Reber for approximately ten (10) years, it was evident to Chappell that Reber's statement was scripted and false, and, on information and belief, compelled by SkyWest, including Emerson and Richard.

47. Nonetheless, SkyWest terminated Chappell from his position on or about August 5, 2020, for allegedly "failing to inspect [the] aircraft after the [occurrence] on March 24, 2020, and violating SP150 and SP3006" by allegedly providing the SkyWest Review Board with "false and misleading testimony, which subverted the mission of the Review Board."

48. After Chappell's first review board and after Chappell was terminated a second time, Chappell had a conversion with Emerson. In response to Chappell's request for documents to support his appeal, Emerson informed Chappell that SkyWest believed from the day of the Occurrence that Chappell and First Officer Reber were aware of the incident and that SkyWest did not care why or how it happened.

49. Absent the negligence of the SkyWest ground crew, there would have been no Occurrence, or Chappell would have been informed of the Occurrence and taken the necessary

steps to ensure the safety of the aircraft, as he had done thousands of times as a pilot for SkyWest.

50. Additionally, without the newly fabricated information provided by First Officer Reber to the Review Board, SkyWest would have had no basis to terminate and likely would not have terminated Chappell.

51. It is also important to note that First Officer Reber was also acting as a pilot on the flight when the incident occurred and had at least the same obligation to report the alleged Occurrence. Reber, however, was not terminated for his participation and/or inaction of preventing the Occurrence, or for his inconsistent statements during the investigation. First Officer Reber is a much younger male employee of SkyWest, and thus paid less and treated in a manner different than Chappell. On information and belief, he and/or his family members are not disabled and have not availed themselves of the same use of SkyWest's group health plan as Chappell.

52. In rendering its decision to terminate Chappell, SkyWest failed to take into consideration all aspects of its investigation, including the findings of Agent Reed (FAA), the IORs from both Chappell and First Officer Reber, as well as the first interviews taken by the Review Board for both First Officer Reber and Chappell.

53. Additionally, no members of the ground crew were held accountable for their participation and/or inaction related to the Occurrence, even though they were found responsible for the incident by both the Review Board and the FAA, prior to First Officer Reber's recanted and altered second statement.

54. SkyWest's disparate treatment of Chappell, its failure to follow its own policies and procedures, and, on information and belief, its efforts to get Reber to change his testimony

were motivated by its discriminatory animus toward Chappell because of his age and/or his association with persons with disabilities and their need for the health coverage offered to him by SkyWest under its group health plan.

55. Specifically, but for Chappell's age, association with members of his family who had disabilities and need for health care benefits covered by SkyWest's group health care plan, Chappell would not have been terminated.

56. According to SkyWest's Pilot Policy Manual, pilots will only be terminated for "severe infractions," which includes "failure to correct any performance or behavioral issue."

57. Based on Chappell's history with SkyWest, he was never consulted, informed of, or given any formal counseling statements, letters of correction, warnings or time off without pay for disciplinary action, and as such, the reasons proffered for his termination are false, fabricated and made with intent to discriminate and retaliate against Chappell due to his age, association with a disabled person, and/or for exercising his right to the health benefits he was eligible as per the terms of his employment.

## FIRST CAUSE OF ACTION
**(Discrimination in Violation of the ADA Against Defendant SkyWest)**

58. The preceding paragraphs are incorporated herein by reference.

59. At all times relevant hereto, Chappell was an employee of SkyWest as defined in §12111(4) of the ADA.

60. At all times relevant hereto, SkyWest was a covered entity as defined in §12111(2) of the ADA, as well as an employer under §12111(5).

61. Chappell was associated with an individual who is disabled within the meaning of the ADA in that his son had a disability, a record of disability and/or was regarded as having a

disability that substantially limited major life activities within the meaning of the ADA, 42 U.S.C. § 12102(1).

62. At all times relevant hereto, Chappell was qualified to perform the essential functions of his job and did in fact perform the essential functions of his job with SkyWest.

63. The ADA, as amended, prohibits covered entities from discriminating against qualified individuals because of disability, 42 U.S.C. § 12112(a).

64. Under the ADA, discrimination against a qualified individual on the basis of disability includes prohibits "excluding or otherwise denying equal jobs or benefits to a qualified individual because of the known disability of an individual with whom the qualified individual is known to have a relationship or association." *See* 42 U.S.C. § 12112(b)(4).

65. SkyWest knew Chappell had a relationship and/or was associated with an individual with a disability when he applied for health benefits under SkyWest's health plan, used the plan to reimburse for claims and costs associated with Chappell's son's disability and wife's hospitalization.

66. SkyWest discriminated against and terminated Chappell's employment because of his association and relationship with an individual(s) with a disability.

67. As a result, Chappell suffered significant damages, including the loss of pay and benefits, and other employment related compensation he lost because of SkyWest's unlawful termination, including the loss of front and back pay and benefits of employment.

68. Because of SkyWest's actions, Chappell is also entitled to recover compensatory damages in an amount to be proven at trial, including non-pecuniary losses for emotional distress, pain and suffering, humiliation, and related damages, in an amount to be determined by the trier of fact, plus attorney's fees and costs incurred in bringing this action.

69. SkyWest's conduct toward Chappell was willful and malicious and manifested a knowing and reckless indifference toward, and disregard of, Chappell's interests and rights, entitling Chappell to an award of punitive damages in an amount to be proved at trial.

## SECOND CAUSE OF ACTION
**(Discrimination in Violation of the ADEA Against Defendant SkyWest)**

70. The preceding paragraphs are incorporated herein by reference.

71. At all times relevant hereto, Chappell was an employee of SkyWest within the meaning of the ADEA, 29 U.S.C. § 630(f).

72. At all times relevant hereto, SkyWest was an employer within the meaning of the ADEA, 29 U.S.C. § 630(b), (c), and (d).

73. At all times relevant hereto, Chappell was a protected individual, as defined by and within the meaning of the ADEA 29 U.S.C. § 631(a) in that he was over forty (40) years of age.

74. At all times relevant hereto, SkyWest was Chappell's employer within the meaning of the ADEA, 29 U.S.C. § 630(b), and could not "limit, segregate, or classify… employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age," pursuant to the meaning of 29 U.S.C. § 623(a)(2).

75. SkyWest knew of Chappell's age and discriminated against him because of his age, including subjecting him to an unwarranted investigation and adverse action by terminating him from his employment.

76. As a result of SkyWest's unlawful discrimination against Chappell because of his age, Chappell suffered damages and is entitled to recover damages for lost wages and other

benefits, including front and back pay, plus attorney's fees and costs incurred in bringing this action, and such further and additional relief as may be available.

77. In addition, Chappell is entitled to an award of liquidated damages because of SkyWest's willful violation of the ADEA in that it knew or should have known it was violating Chappell's rights and/or acted in reckless disregard for its violation of Chappell's ADEA rights.

### THIRD CAUSE OF ACTION
### (Violation of Section 510 of ERISA Against All Defendants)

78. The preceding paragraphs are incorporated herein by reference.

79. During his employment Chappell received health benefits from SkyWest which benefits were covered by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et. seq. ("ERISA").

80. Specifically, the group health plan offered to Chappell by SkyWest was a welfare benefit plan established or maintained by SkyWest that provide welfare benefits, i.e., medical benefits, disability benefits, and death benefits. See, 29 U.S.C. § 1002(1).

81. Section 510 of ERISA, 29 U.S.C. § 1140, prohibits SkyWest from interfering or otherwise retaliating against Chappell for exercising his protected rights under the plan which it established and allowed Chappell to participate in, including discriminating against Chappell for exercising any rights he is entitled to under the plan, or for the purpose of interfering with the attainment of any rights they may later become entitled to under the plan.

82. While employed by SkyWest, Chappell was entitled to receive and did receive group health benefits under an employer sponsored plan governed by ERISA, including specifically health benefits offered through SkyWest's employer sponsored health plan that existed during Chappell's employment.

83. Chappell's termination of employment was for the purpose of interfering with his respective and continued use of such plan benefits, including the benefits he needed for the health issues and serious health conditions identified above, and/or retaliating against him for the previous use of such plan benefits during his employment, including for his spouse and son.

84. In taking the adverse actions against Chappell – including terminating his employment – SkyWest was motivated by a desire and intent to violate ERISA and to interfere and/or retaliate against Chappell's ERISA rights, and SkyWest's actions were causally connected to Chappell's use of his group health plan benefits and/or continued use of such benefits.

85. For example, on information and belief, SkyWest was concerned about the possibility of rising health insurance premiums and that it believed that Chappell's family's continued use of such plan benefits would drive up costs.

86. Additionally, in addition to the timing of Chappell's termination, the stated reasons for his termination were demonstrably false and/or unworthy of credence, demonstrating that the employer's stated justification for his termination is false or unworthy of credence.

87. As a direct and proximate result of SkyWest's unlawful actions, Chappell is entitled to restitution and an award of back pay in an amount to be determined at trial, benefits costs incurred by him, attorney's fees, and costs, and such further equitable relief as the Court deems appropriate, including injunctive relief and/or reinstatement to his former position.

88. In addition, the individual named defendants are also employers for purposes of Chappell's ERISA claim as they each acted directly and/or indirectly in the interest of SkyWest, in relation to an employee benefit plan offered by SkyWest, and in retaliation against Chappell for exercising his rights under the plan.

## FOURTH CAUSE OF ACTION
### (Violation of Rehabilitation Act of 1973 Against Defendant SkyWest)

89. The preceding paragraphs are incorporated herein by reference.

90. The Rehabilitation Act of 1973, as amended, prohibits employment discrimination based on disability, 281 U.S.C. §§ 791 et seq.

91. SkyWest receives federal financial assistance and is a covered entity under the Rehabilitation Act under § 504 of the Act. As such, SkyWest is prohibited from discriminated against any "qualified individual has a relationship or is associated with an individual with a disability."

92. As referenced more fully above, Chappell is and was a qualified individual who has a relationship and/or is associated with an individual with a disability. Pursuant to 29 U.S.C. § 794(d), the standards used to determine whether SkyWest unlawfully discriminated against Chappell are "the standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities Act of 1990 (42 U.S.C. 12201–12204 and 12210), as such sections relate to employment.

93. SkyWest violated section 504 of the Rehabilitation Act, 29 U.S.C. § 794, by either terminating Chappell because his relationship and/or association with an individual with a disability, perceived disability, or record of impairment, or retaliating against Chappell for exercising his right to the employer health plan offered to him to care for his son's disability.

94. Because of SkyWest's actions, Chappell has suffered damages, including but not limited to the loss of past and future wages and benefits, damage to his profession and career, emotional distress, and mental pain and anguish in an amount to be proven at trial.

95. Chappell is entitled to his reasonable attorney's fees and costs incurred in this matter pursuant to 29 U.S.C. § 794(a).

96. Chappell is also entitled to any and all relief permitted under the Rehabilitation Act of 1973, 29 U.S.C. § 701, et. seq., including equitable relief, as proved at trial.

## FIFTH CAUSE OF ACTION
### (Breach of Contract – Utah Law – by Defendant SkyWest)

97. The preceding paragraphs are incorporated herein by reference.

98. The SkyWest Airlines Pilot Policy Manual formed a binding and enforceable contract between Chappell and SkyWest.

99. The SkyWest Airlines Pilot Policy Manual was drafted by SkyWest and presented to Chappell on a take-it-or-leave-it basis.

100. Chappell performed pursuant to the terms set forth in the SkyWest Airlines Pilot Policy Manual.

101. Specifically, the SkyWest Airlines Pilot Policy Manual states that SkyWest will only terminate a pilot's employment for "severe infractions and/or failure to correct any performance or behavioral issue…."

102. A one-time incident, even if true, does not constitute a "severe infraction."

103. SkyWest breached the terms of the SkyWest Airlines Pilot Policy Manual when it terminated Plaintiff after his conduct had been cleared by both SkyWest and the FAA.

104. SkyWest also breached the terms of its internal, unwritten policy when it presented Chappell and Reber to a Review Board constituted by the same members.

105. Because of SkyWest's actions, Chappell has suffered damages, including but not limited to the loss of past and future wages and benefits, damage to his profession and career, emotional distress, and mental pain and anguish in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
**(Negligence – Utah Law – Against Defendant SkyWest)**

106. The preceding paragraphs are incorporated herein by reference.

107. SkyWest owed Chappell a duty of care to ensure his safety, as well as the safety of his First Officer, the flight crew, and passengers.

108. SkyWest breached that duty when its grounds crew failed to immediately notify Chappell of the alleged Occurrence.

109. As a result of SkyWest's breach, Plaintiff unknowingly placed the safety of himself, his First Officer, the flight crew, and passengers in danger.

110. Also, because of SkyWest's breach, Chappell was unaware of and therefore not able to report the Occurrence, which led to the termination of his employment.

111. Because of SkyWest's actions, Chappell has suffered damages, including but not limited to the loss of past and future wages and benefits, damage to his profession and career, emotional distress, and mental pain and anguish in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
**(Fraud Against All Defendants)**

112. The preceding paragraphs are incorporated herein by reference.

113. Reber and, on information and belief, Richard, Emerson, and SkyWest intentionally made false statements to the Review Board to cause Chappell's termination, after he had been reinstated following the FAA's determination that he was not at fault for the Occurrence.

114. Reber's false statement concerning Chappell's knowledge of the Occurrence and his failure to report the Occurrence concerned a presently existing material fact.

115. At the time Reber made the false statement to the Review Board, Reber, Emerson,

Richard and SkyWest knew Reber's statement was false or knew that he it made recklessly, knowing that there was insufficient knowledge upon which to base such a representation.

116. Reber made the statement in combination with the other defendants for the purpose of inducing the Review Board to act upon it and (6) the Review Board acting reasonably and in ignorance of its falsity when they accepted Reber's testimony and terminated Chappell's employment, inducing the Review Board to termination Chappell.

117. The foregoing false statements made by defendants were important and material to the Review Board's decision to terminate Chappell.

118. Defendants' misrepresentations resulted in financial loss to Plaintiff in an amount as proved at trial.

119. Defendants' actions were also willful and malicious and manifest a knowing and intentional indifference to and a disregard for Plaintiff's rights, entitling Plaintiff to an award of punitive damages in an amount determined by the trier of fact, and such other relief as allowed by law, including attorney fees and costs incurred in bringing this action.

### EIGHTH CAUSE OF ACTION
**(Civil Conspiracy to Commit Fraud Against All Defendants)**

120. The preceding paragraphs are incorporated herein by reference.

121. Reber's testimony before the Review Board that Chappell was aware of the Occurrence and that he failed to act in response to the Occurrence was false.

122. On information and belief, Reber's false testimony was dictated to Reber by Richard and/or Emerson and SkyWest.

123. Defendants knew that Reber's testimony was false at the time recanted his prior testimony and changed his story.

124. Reber's false testimony was intended by Reber, Richard, Emerson, and SkyWest to mislead the Review Board and establish a false premise for the termination of Chappell's employment. In other words, Reber, Richard, Emerson and SkyWest had a meeting of the minds concerning their planned course of conduct against Chappell and the false information they submitted to the Review Board to cause Chappell's termination.

125. Defendants took one or more over acts in furtherance of their conspiracy against Chappell, as more fully alleged above, including inducing and changing Reber's testimony and submitting such false testimony to the Review Board.

126. The Review Board relied on Reber's false testimony and recommended the termination of Chappell's employment over Chappell's objection that the testimony was false.

127. As a proximate result of actions of Reber, Richard, Emerson, and SkyWest, Chappell has suffered damages, including but not limited to the loss of past and future wages and benefits, damage to his profession and career, emotional distress, and mental pain and anguish, attorney fees and costs, in an amount to be proved at trial.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38, Chappell demands a trial by jury an all issues that are triable by a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Randy Chappell, prays for judgment against Defendants, as follows:

a. For a judgment in Chappell's favor and against Defendants, as applicable, for violations of the ADA, ADEA, ERISA, and Rehabilitation Act, as well as his state law claims;

  b. For an order awarding Chappell all lost wages and benefits, compensation and other pecuniary damages caused by Defendants' actions and omissions, including back pay and reinstatement (or front pay in lieu reinstatement, as applicable), and other pecuniary damages recoverable under relevant law, in an amount to be determined at trial;

  c. For an order awarding Chappell compensatory damages, including non-pecuniary damages for emotional distress, pain and suffering, humiliation and loss of professional reputation and career, in an amount to be determined at trial;

  d. For an order awarding Chappell pre- and post-judgment interest as applicable;

  e. For an order awarding Chappell his attorney's fees and costs of suit, including expert witness fees, incurred in bringing this action, as applicable;

  f. For an order awarding Chappell punitive damages in an amount to be determined at trial; and

  g. For an order awarding such further and additional relief as the Court deems appropriate.

  DATED this 10th day of August, 2021.

            /s/ **Andrew W. Stavros**
            Andrew W. Stavros
            STAVROS LAW P.C.
            *Attorney for Plaintiff*