THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| RANDY T. CHAPPELL,<br><br>Plaintiff,<br><br>v.<br><br>SKYWEST AIRLINES, INC.,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 4:21-cv-00083-DN-PK<br><br>District Judge David Nuffer |

This case arises from the termination of Plaintiff Randy T. Chappell's employment from Defendant SkyWest Airlines, Inc. ("SkyWest").[1] Mr. Chappell alleges six causes of action against SkyWest:[2]

(1) discrimination in violation of the Americans with Disabilities Act ("ADA");[3]

(2) discrimination in violation of the Age Discrimination in Employment Act ("ADEA");[4]

(3) violation of § 510 of the Employee Retirement Income Security Act ("ERISA");[5]

(4) violation of the Rehabilitation Act of 1973 ("Rehabilitation Act");[6]

---

[1] Complaint, docket no. 2, filed Aug. 11, 2021.

[2] Mr. Chappell's Complaint included two additional claims against SkyWest for fraud and civil conspiracy to commit fraud. *Id*. ¶¶ 112-127 at 16-18. These claims were dismissed with prejudice on stipulation of the parties. Order Granting Motion to Dismiss Two Claims With Prejudice, docket no. 53, filed June 21, 2023.

[3] Complaint ¶¶ 58-69 at 9-11.

[4] *Id*. ¶¶ 70-77 at 11-12.

[5] *Id*. ¶¶ 78-88 at 12-13.

[6] *Id*. at ¶¶ 89-96 at 14-15.

(5) breach of contract;[7] and

(6) negligence.[8]

SkyWest seeks summary judgment on each of Mr. Chappell's claims ("Motion for Summary Judgment").[9]

Because the undisputed material facts demonstrate that Mr. Chappell cannot establish the requisite elements for any of his claims, SkyWest's Motion for Summary Judgment[10] is GRANTED.[11]

**Contents**

UNDISPUTED FACTS ............................................................................................................ 3
STANDARD OF REVIEW .................................................................................................... 17
DISCUSSION ......................................................................................................................... 18
    Mr. Chappell's ADA claim fails ...................................................................................... 18
    Mr. Chappell's ADEA claim fails ................................................................................... 23
    Mr. Chappell's ERISA claim fails .................................................................................. 24
        Mr. Chappell fails to establish ERISA interference............................................ 25
        Mr. Chappell fails to establish ERISA retaliation ............................................. 26
    Mr. Chappell concedes his Rehabilitation Act claim fails............................................... 27
    Mr. Chappell's breach of contract claim fails................................................................. 28
    Mr. Chappell's negligence claim fails ............................................................................ 30
ORDER .................................................................................................................................... 34

---

[7] *Id.* at ¶¶ 97-105 at 15.

[8] *Id.* at ¶¶ 106-111 at 16.

[9] Defendant's Motion for Summary Judgment ("Motion for Summary Judgment"), docket no. 54, filed June 28, 2023.

[10] *Id.*

[11] SkyWest was directed to prepare and submit a proposed memorandum decision and order granting its Motion for Summary Judgment. Notice of Court's Intent to Grant Motion for Summary Judgment and Order Directing Defendant to Prepare and Submit Proposed Memorandum Decision and Order, docket no. 64, filed Oct. 13, 2023. Mr. Chappell was given the opportunity to objection to the form of SkyWest's proposed memorandum decision and order. *Id*. Mr. Chappell did not file or otherwise submit any objection.

## UNDISPUTED FACTS[12]

1.      Mr. Chappell was employed at SkyWest as a pilot until 2020.[13]

2.      Mr. Chappell agrees that it is never appropriate for a pilot to assume that something is safe.[14]

3.      Mr. Chappell admits that, as a captain, by regulation, he must take full responsibility for the safe operation of the aircraft on every flight.[15]

4.      Mr. Chappell and First Officer Justin Reber flew from St. George, Utah to Salt Lake City, Utah in the early morning on March 24, 2020 (the "Flight").[16]

5.      The Weather Airport NOTAMs Threats brief ("WANT brief") for the Flight did not include information that would have altered the flight crew that Gate #1 was close to a hazard.[17]

6.      Upon pushing back from the gate, Mr. Chappell made a roughly 270-degree turn to go to the runway.[18]

---

[12] Those facts, or portions thereof, identified in the parties' briefing that do not appear in these Undisputed Facts are either disputed; not supported by cited evidence; not material; or are not facts, but rather, are characterization of facts or legal argument. Self-serving and conclusory assertions within an affidavit or declaration are not accepted for purposes of raising a genuine dispute of a material fact. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). Additionally, some of these Undisputed Facts are not material to the disposition of SkyWest's Motion for Summary Judgment, but are nevertheless included to give background and context to the issues raised in the Motion for Summary Judgment.

[13] Video-Recorded Deposition of Randy Thomas Chappell ("Chappell Depo.") at 26:18-23, docket no. 54-1, filed June 28, 2023.

[14] *Id*. at 49:12-15.

[15] *Id*. at 52:6-18.

[16] *Id*. at 62:10-64:10.

[17] Investigation Findings at 1, docket no. 54-6, filed June 28, 2023.

[18] Chappell Depo. at 86:16-23.

7.      As he was making the turn, Mr. Chappell drove the airplane off the tarmac into dirt (the "Occurrence").[19]

8.      The wheels of the airplane sank into the mud about 14 inches.[20]

9.      The aircraft got stuck and stopped moving.[21]

10.     Mr. Chappell testified that he assumed he had run over a drainage grate.[22]

11.     Mr. Chappell admits that he did nothing to confirm that it was a drainage grate, and testified that he did not believe he needed to confirm it was a drainage grate.[23]

12.     Mr. Chappell used the thrusters to get the plane moving again, thrusting up to 75%.[24]

13.     Mr. Chappell felt the plane shift from side to side; having reviewed video of this, Mr. Chappell admits it looks "pretty dramatic."[25]

14.     Mr. Chappell drove back onto the tarmac and proceeded to the runway, without stopping to check anything.[26]

15.     The Flight proceeded to Salt Lake City.[27]

16.     After the landing, Mr. Reber did a walk-around of the aircraft.[28]

---

[19] *Id*. at 93:19-22; Post-Incident View of Ramp with Tracks in Non-Paved Area ("Post-Occurrence Photo"), docket no. 54-2, filed June 28, 2023.

[20] Chappell Depo. at 93:14-18; Post-Occurrence Photo.

[21] Chappell Depo. at 87:22-24.

[22] *Id*. at 91:2-3.

[23] *Id*. at 102:9-13.

[24] *Id*. at 87:25-88:12; N461SW Engines Thrust/FDR Analysis ("Thrust Analysis"), docket no. 54-3, filed June 28, 2023.

[25] Chappell Depo. at 92:6-9, 102:4-7, 142:14-17.

[26] *Id*. at 94:23-95:3.

[27] *Id*. at 105:19-21.

[28] *Id*. at 112:1-4.

17.     Mr. Reber told Mr. Chappell that there was dirt on the tire.[29]

18.     After being told of the dirt on the tire, Mr. Chappell did not feel the need to go look at the tire.[30]

19.     Without ascertaining the severity of dirt on the tires, Mr. Chappell left the scene.[31]

20.     At the request of his supervisor, Mr. Chappell submitted an Irregular Operations Report ("IOR") the next day, March 25, 2020.[32]

21.     In his IOR, Mr. Chappell stated, "We were unaware that the aircraft was not on the tarmac. If we would have [sic] I would have returned to the gate."[33]

22.     Mr. Reber also submitted an IOR on March 25, 2020, while the "event was still fresh in [his] mind."[34] In his IOR, Mr. Reber stated, "About two third or so through the 270 degree turn (we were headed towards runway 1 for a northbound departure that morning) there was the potential that the plane could have been on dirt for a moment, but I had little to no visibility from my vantage point as we were turning left."[35]

23.     Mr. Reber indicated in his IOR that he did not "recall any pavement edge paint lines or lights in that area and both of those would help. Also, the rampers could probably help prevent this in the future by not pushing planes back and angling them towards the dirt area. It

---

[29] *Id.* at 114:3-11.

[30] *Id.* at 128:18-129:4.

[31] *Id.* at 129:10-13.

[32] *Id.* at 116:25-117:5, 118:10-21; IOR #00076682 ("Chappell IOR"), docket no. 54-4, filed June 28, 2023.

[33] Chappell IOR.

[34] Deposition of Justin Reber ("Reber Depo.") at 26:3-8, docket no. 59-2, filed Aug. 2, 2023.

[35] IOR #00093818 ("Reber IOR"), docket no. 54-5, filed June 28, 2023.

was dark that early morning and it would be helpful if there was better flood type lighting to illuminate the area toward the north part of the ramp."[36]

24.     Mr. Reber also wrote in his IOR that "[T]he captain gave a bit more power to continue the taxi and we proceeded normally towards runway 1."[37]

25.     Mr. Reber was aware that "IOR's can sometimes lead to disciplinary action" and that "it's important to be truthful and as accurate as possible when you fill out an IOR."[38]

26.     Mr. Reber did not write or submit his IOR jointly with Mr. Chappell.[39]

27.     SkyWest investigated the Occurrence.[40]

28.     During the investigation, Mr. Reber was asked to and did submit a written statement ("Event Statement").[41]

29.     Mr. Reber wrote in his Event Statement that he knew the plane went into dirt: "[M]idway through the turn I look down at the moving ground where the nose light is crossing and am shocked to see what appears to be dirt."[42]

30.     Mr. Reber also wrote that he verbally alerted Mr. Chappell about what had just happened: "It was dark, flat, red dirt. I stated to say, 'What the….?' and then the nose of the plane was back on pavement."[43]

---

[36] *Id.*; Investigation Findings at 1.

[37] Reber IOR.

[38] *Id*.

[39] Reber Depo. at 31:9-13, 32:9-11.

[40] Investigation Findings.

[41] Reber Depo. at 44:17-45:3; St. George Taxi Event ("Event Statement"), docket no. 54-7, filed June 28, 2023.

[42] Event Statement.

[43] *Id*.

31.    Mr. Reber included in his Event Statement that "[t]he right mains stopped at lip of the asphalt momentarily, [Mr. Chappell] gave it more power, and we were again taxiing. This all took just a few seconds."[44]

32.    Mr. Reber opined, "Did [Mr. Chappell] know he went on dirt? Though he never admitted it, he undoubtedly knew."[45]

33.    Mr. Reber listed five factors in his Event Statement that he believed to be the causes of the aircraft leaving the tarmac during the Occurrence: (1) poor overhead floodlighting; (2) no edge lighting;(3) rampers angling the plane towards the left; (4) lack of adequate pavement near the place; and (5) overly aggressive turnout by [Mr. Chappell] without looking first.[46]

34.    Mr. Reber agreed that four of the five factors that he listed were beyond the control of the flight crew.[47]

35.    Mr. Reber also agreed that the first four factors that he listed were jointly the responsibility of SkyWest and the St. George Airport.[48]

36.    Mr. Reber testified that he did not believe the aircraft would have gone off the tarmac if the first four factors had not been present.[49]

37.    After the Occurrence but prior to drafting the Event Statement, Mr. Reber spoke with the FAA.[50]

---

[44] *Id*.

[45] *Id*.

[46] *Id*.; Reber Depo. at 13-17, 59:24-60:16.

[47] Reber Depo. at 60:9-12.

[48] *Id*. at 60:22-25.

[49] *Id*. at 61:1-11.

[50] *Id*. at 46:21-47:1; Event Statement at 1.

38.     According to Mr. Reber, the information that he provided to the FAA was "pretty close" to that within his statement provided in the IOR to SkyWest.[51]

39.     The FAA agent that spoke with Mr. Reber recalled that "[b]oth pilots stated there was no discussion of any event at St. George during taxi, en-route, after landing, or post-flight.[52]

40.     Mr. Chappell who informed the same FFA Agent that he did not know that the aircraft had left the runway during the Occurrence.[53]

41.     The FAA never took any disciplinary action against Mr. Reber based on the Occurrence.[54]

42.     Following SkyWest's investigation, Mr. Chappell's employment was terminated on April 24, 2020, for safety violations ("First Termination").[55]

43.     Mr. Reber's employment was also terminated the same day for safety violations.[56]

44.     SkyWest has a review board process through which a pilot may appeal an employment termination.[57]

45.     The review board panel consists of four people, including two pilots and two management employees.[58]

---

[51] Reber Depo. at 62:22-25.

[52] Email Chain Between Randy Chappell and Charles Reed at 2-3, docket no. 59-4, filed Aug. 2, 2023.

[53] *Id*.

[54] Reber Depo. at 64:6-9, 65:7-10.

[55] Review Board Hearing Oct. 15, 2020 ("Second Review Board Hearing") at 3, docket no. 54-8, filed June 28, 2023; Termination Decision, docket no. 54-9, filed June 28, 2023.

[56] Reber Depo. at 52:7-12.

[57] Chappell Depo. at 132:7-17.

[58] *Id*. at 133:7-11.

46.     The pilot who requests a review board is informed who will be on the panel and must approve of the panel members.[59]

47.     The review board is the decision-maker on whether the termination is upheld.[60]

48.     Mr. Chappell used this process to appeal his First Termination; his review board hearing occurred on June 16, 2020 ("First Review Board").[61]

49.     During his First Review Board, Mr. Chappell admittedly told the panel that he did not feel he was being discriminated against.[62]

50.     At the conclusion of the First Review Board, the panel overturned Mr. Chappell's First Termination on June 16, 2020, and reinstated him.[63]

51.     Mr. Reber's review board hearing as to his termination occurred the next day, on June 17, 2020.[64]

52.     Mr. Reber was aware that Mr. Chappell's First Review Board was scheduled for the day before Mr. Reber's review board hearing.[65]

53.     Mr. Reber was also aware that the members of his panel would be the same board members who heard Mr. Chappell's First Review Board.[66]

54.     Mr. Reber testified that he "probably" reviewed Mr. Chappell's IOR prior to his review board hearing.[67]

---

[59] *Id*. at 133:12-16.

[60] *Id*. at 132:18-23.

[61] Second Review Board Hearing.

[62] Chappell Depo. at 139:21-140:6.

[63] *Id*. at 145:3-7, 145:24-146:1.

[64] *Id*. at 146:2-4.

[65] Reber Depo. at 71:18-21.

[66] *Id*. at 72:1-11.

[67] *Id*. at 74:15-16.

55.     Mr. Reber discussed the content of his testimony with several pilots and flight attendants prior to his review board hearing.[68]

56.     Mr. Reber made self-incriminating statements (namely, that both he and Mr. Chappell knew the aircraft went off the tarmac) during his review board.[69]

57.     Mr. Reber informed the review board that "I knew this wasn't life-threatening. But I also knew it wasn't a good thing either. So, before leaving the ramp area in front of the St. George terminal building, I brought this issue to [Mr. Chappell's] attention as he continued to taxi. I wanted to discuss it and said to him, 'What the crap was that? You just taxied us on the dirt.' [Mr. Chappell] dismissed my attempt at discussing or resolving what had just happened and responded with, 'Don't worry about it. Get a clearance from LA.'"[70]

58.     Mr. Reber informed the review board that during his post-flight inspection, he "noted dirt marks on the outer walls of the tires. There were some on the nose wheel and left mains but mostly on the right mains, because they had traveled furthest off the ramp."[71]

59.     During Mr. Reber's review board hearing, Roy Glassey (advocating on behalf of SkyWest) discussed Mr. Chappell's actions as well as his testimony provided to the First Review Board the previous day.[72]

60.     Mr. Glassey presented and discussed the contents of Mr. Chappell's IOR, and argued that, "[Mr. Chappell's] IOR certainly is not in alignment with what happened."[73]

---

[68] Id. at 74:22-75:20.

[69] Chappell Depo. at 221:7-16.

[70] SkyWest00103 Reber Hearing ("Reber Review Board Hearing") at 11, docket no. 63-1, filed Aug. 23, 2023.

[71] Id. at 13-14.

[72] Id. at 17-19, 21-24.

[73] Id. at 21.

61.     Following Mr. Glassey's statements, a board member asked Mr. Reber, "Do you feel in your best judgment [Mr. Chappell] realized he was off the pavement?" to which Mr. Reber responded, "I'll guarantee he knows, 100%."[74]

62.     Having heard Mr. Reber's testimony, panel members reported to SkyWest's Employee Relations that they felt they had been "duped" by Mr. Chappell in the First Review Board the day prior.[75]

63.     SkyWest investigated the panel members' report.[76]

64.     On July 20, 2020, Employee Relations Manager Pennie Hancock drafted an email to herself documenting "we learned [Mr.] Chappell had not been fully truthful when presenting his account of [the Occurrence]."[77]

65.     On August 5, 2020, Mr. Chappell's employment was terminated again, now for being untruthful in violation of policies ("Second Termination").[78]

66.     On September 4, 2020, a second FAA agent, Douglas DiFrancesco, contacted Mr. Reber.[79]

67.     Mr. Reber was hesitant to provide any additional information to Agent DiFrancesco.[80]

---

[74] *Id*. at 30.

[75] Second Review Board Hearing at 2, 10.

[76] *Id*. at 2-3.

[77] Email from Pennie Hancock to Pennie Hancock, docket no. 59-5, filed Aug. 2, 2023.

[78] Second Review Board Hearing at 2-3, 10; Termination Decision.

[79] Email Chain Between Justin Reber and Douglas DiFrancesco, docket no. 59-6, filed Aug. 2, 2023; Reber Depo. at 65:15-17.

[80] Reber Depo. at 65:15-17.

68.     Mr. Reber wanted to know how it would benefit him if he agreed to submit additional information to Agent DiFrancesco.[81]

69.     Mr. Reber did not send any additional information regarding the Occurrence to the FAA in response to Agent DiFrancesco's request.[82]

70.     Mr. Chappell appealed his Second Termination (the "Second Review Board").[83]

71.     The Second Review Board consisted of four people who had not been on the First Review Board.[84]

72.     Mr. Chappell approved of the Second Review Board members.[85]

73.     The final decision-maker as to Mr. Chappell's Second Termination was the Second Review Board.[86]

74.     Mr. Chappell admits that, ultimately, a review board (such as the Second Review Board) would have to decide who and what they were going to believe when confronted with contradictory statements (such as those between Mr. Chappell and Mr. Reber).[87]

75.     The Second Review Board hearing was scheduled for October 15, 2020.[88]

76.     In the Second Review Board, Mr. Chappell took the opportunity to produce evidence.[89]

---

[81] *Id*. at 70:11-16.

[82] *Id*. at 69:12-14.

[83] Chappell Depo. at 146:12-17.

[84] *Id*. at 146:18-24.

[85] *Id*. at 148:1-6.

[86] *Id*. at 165:2-5.

[87] *Id*. at 150:25-151:6.

[88] Second Review Board Hearing.

[89] Chappell Depo. at 152:8-12.

77.     The Second Review Board panel upheld Mr. Chappell's Second Termination.[90]

78.     Mr. Reber was aware of Mr. Chappell's Second Review Board and when it was scheduled.[91]

79.     Prior to Mr. Chappell's Second Review Board, Mr. Reber sent an email to Chief Pilot Mark Richards and the head of SkyWest's Human Resources Department, Nicole Chapman, claiming that he feared for his safety and for that of his family, and that he might suffer "retribution" if Mr. Chappell "be told by [SkyWest] details [Mr. Reber] shared confidentially[.]"[92]

80.     Ms. Chapman responded that there was no need for concern because Mr. Chappell would not be learning anything new at the hearing and this Mr. Reber's "statements to [SkyWest] are subject to confidential controlled and will not be shared outside of the review board setting."[93]

81.     Mr. Reber sent a second email stating that he feared Mr. Chappell because Mr. Chappell "is the only person [he] kn[e]w that has harbored or housed a known felon."[94]

82.     Mr. Reber stated during his deposition that he did not know what Mr. Chappell was looking at during the Occurrence.[95]

---

[90] *Id*. at 152:13-16.

[91] Reber Depo. at 104:25-105:4.

[92] *Id*. 105:5-106:7; Email Chain Between Justin Reber, Nichole Chapman, and Mark Richards, docket no. 63-2, filed Aug. 23, 2023.

[93] Reber Depo. at 109:6-13; Email Chain Between Justin Reber, Nichole Chapman, and Mark Richards.

[94] Reber Depo. at 110:18-111:22; Email Chain Between Justin Reber, Nichole Chapman, and Mark Richards.

[95] Reber Depo. at 52:20-21, 53:2-4, 55:23-25.

83.     Mr. Reber stated during his deposition that he did not actually say "What the?" or anything else when the plane left the tarmac because "it happened really quickly," but did so a few seconds after the plane was back on the tarmac.[96]

84.     In the past 10 years, no other SkyWest pilot has been discharged for the same reasons that Mr. Chappell was discharged (namely, dishonesty in violation of policies).[97]

85.     Mr. Chappell testified four times about why he believes his employment was terminated:

     (a)     for the Occurrence;[98]

     (b)     because of the Occurrence;[99]

     (c)     for not being truthful;[100] and

     (d)     because SkyWest believed from the start that he knew he had driven into the dirt.[101]

86.     SkyWest's Company Policy Manual states that SkyWest's employees are employed at will.[102]

87.     The Company Policy Manual expressly states that SkyWest's policies do not constitute a contract.[103]

---

[96] *Id*. 50:8-15, 51:2-7.

[97] Defendant's First Supplemental Responses to Plaintiff's Initial Interrogatory Requests at 4, docket no. 54-10, filed June 28, 2023.

[98] Chappell Depo. at 155:6-11.

[99] *Id*. at 131:25-132:6

[100] *Id*. at 146:9-11.

[101] *Id*. at 144:21-145:2.

[102] Company Policy Manual, Nature of Employment, Standard Practice 51, docket no. 54-11, filed June 28, 2023.

[103] *Id*.

88.     SkyWest's Pilot Policy Manual ("PPM") provides, "[t]his Policy Manual will remain in effect indefinitely."[104]

89.     The PPM contains Pilot Rules of Conduct ("Conduct Rules").[105]

90.     Mr. Chappell acknowledges that the Conduct Rules obligate him to provide full, complete, and honest information, and that SkyWest can terminate his employment for failure to comply.[106]

91.     Mr. Chappell admits that falsifying company reports is an immediate termination issue.[107]

92.     Mr. Chappell admits that it would be appropriate for SkyWest to terminate one's employment if SkyWest believed that individual falsified company records.[108]

93.     Mr. Chappell agrees that it is appropriate for SkyWest to have zero tolerance for untruthfulness from pilots.[109]

94.     Mr. Chappell is not aware of any direct evidence to support a conclusion that his termination was because he was over age 40.[110]

95.     The only evidence Mr. Chappell is aware of to show an ADA violation is that, when Mr. Chappell was reinstated in June 2020, it took SkyWest over three weeks to get him back on insurance.[111]

---

[104] Pilot Policy Manual at 3003.1, docket no. 54-12, filed June 28, 2023.

[105] *Id*. at 3006.2-3006.6.

[106] Chappell Depo. at 157:11-18, 158:1-3, 159:17-24.

[107] *Id*. at 160:20-25.

[108] *Id*. at 50:8-12.

[109] *Id*. at 50:8-12.

[110] *Id*. at 185:16-20.

[111] *Id*. at 186:15-187:5.

96.     Mr. Chappell admits that the expense of his wife's medical procedure, which occurred after his termination, was not a motivating factor in his termination.[112]

97.     Mr. Chappell admits that SkyWest has paid for his wife's heart procedure.[113]

98.     Mr. Chappell believes he was a high-cost employee to SkyWest because of his health insurance needs.[114]

99.     Mr. Chappell admits that SkyWest was his family's health insurance provider for his last fourteen years and, during that time, SkyWest paid for those benefits.[115]

100.    Other than an assumption related to COVID, Mr. Chappell cannot identify anything that changed such that SkyWest would no longer be willing to pay for his insurance.[116]

101.    Mr. Chappell assumes that SkyWest wanted to end his benefits to save money.[117]

102.    Aside from the expense of his son's diabetes, Mr. Chappell is aware of no other correlation between his benefits and his termination.[118]

103.    Mr. Chappell admits that he has no evidence that anyone who was involved in the termination of his employment had any access to information about his benefit use.[119]

104.    Mr. Chappell admits that, as far as he knows, no one at SkyWest has access to his benefits use information.[120]

---

[112] *Id.* at 190:23-191:6.

[113] *Id.* at 190:4-12.

[114] *Id.* at 188:1-9.

[115] *Id.* at 188:14-22.

[116] *Id.* at 189:1-13.

[117] *Id.* at 189:14-23.

[118] *Id.* at 191:9-12.

[119] *Id.* at 226:10-227:2.

[120] *Id.* at 227:11-13.

105.    When asked what contract was breached, Mr. Chappell testified that he is not aware that he has such a claim.[121]

106.    Mr. Chappell is not aware of any witnesses that would support any of his claims.[122]

## STANDARD OF REVIEW

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[123] A factual dispute is genuine when "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way"[124] or "if a reasonable jury could return a verdict for the nonmoving party."[125] A fact is material if "it is essential to the proper disposition of [a] claim."[126] And in ruling on a motion for summary judgment, the factual record and all reasonable inferences drawn therefrom are viewed in a light most favorably to the nonmoving party.[127]

The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."[128] If the moving party carries this initial burden, the nonmoving party "may not rest upon mere allegations or denials of [the] pleading[s], but must set forth *specific facts* showing that there is a

---

[121] *Id*. at 191:19-23.

[122] *Id*. at 208:23-209:1.

[123] Fed. R. Civ. P. 56(a).

[124] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[125] *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1529 (10th Cir. 1994) (internal quotations omitted).

[126] *Adler*, 144 F.3d at 670.

[127] *Id*.

[128] *Id*. at 670-71.

*genuine issue* for trial as to those dispositive matters for which it carries the burden of proof."[129]

Conjecture and speculation are not enough.[130] "The mere existence of a scintilla of evidence in

support of the [nonmovant's] position will be insufficient to defeat a properly supported motion

for summary judgment."[131]

## DISCUSSION

Mr. Chappell alleges six causes of action against SkyWest: (1) discrimination in violation

of the ADA; (2) discrimination in violation of the ADEA; (3) violation of § 510 of ERISA;

(4) violation of the Rehabilitation Act of 1973; (5) breach of contract; and (6) negligence.[132]

SkyWest seeks summary judgment arguing that Mr. Chappell cannot establish a prima facie case

for any of his claims, and that SkyWest terminated Mr. Chappell's employment for legitimate,

non-discriminatory reasons after concluding that Mr. Chappell had been dishonest in violation of

company policies. For the following reasons, summary judgment in favor of SkyWest is

GRANTED.

### Mr. Chappell's ADA claim fails

Absent direct evidence of associational disability discrimination under 42 U.S.C.

§ 12112(b)(4), the *McDonnell Douglas* burden-shifting framework applies. First, a plaintiff must

establish a prima facie case, by showing: (1) the plaintiff was qualified for the job at the time of

the adverse employment action; (2) the plaintiff was subjected to an adverse employment action;

(3) the plaintiff was known by the employer at the time to have a relative or associate with a

---

[129] *Universal Money Ctrs., Inc.*, 22 F.3d at 1529 (internal quotations and citations omitted; emphasis in original).

[130] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *McIntosh v. Boatman's First Nat. Bank of Okla.*, 103 F.3d 144 (Table), *1 (10th Cir. 1996).

[131] *Universal Money Ctrs., Inc.*, 22 F.3d at 1529 (internal quotations omitted).

[132] Complaint, ¶¶ 58-111 at 9-16. Mr. Chappell's other claims against SkyWest were dismissed with prejudice on stipulation of the parties. *Id*. ¶¶ 112-127 at 16-18; Order Granting Motion to Dismiss Two Claims With Prejudice.

disability; and (4) the adverse employment action occurred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision.[133] The defendant must then proffer a legitimate, non-discriminatory reason for the plaintiff's adverse employment action.[134] And then the burden then shifts back to the plaintiff to provide evidence that the defendant's stated reason is pretextual.[135]

Mr. Chappell's ADA claim fails at least the fourth element of establishing a prima facie case: the circumstances do not raise an inference that a relative's disability was a determining factor in SkyWest's decision to terminate Mr. Chappell. It is undisputed that Mr. Chappell has no evidence that anyone involved in the termination of his employment had any access to information about his benefit use.[136] This alone is dispositive of Mr. Chappell's ADA claim.[137] Additionally, it is also undisputed that Mr. Chappell stated during his First Review Board that he did not feel he was being discriminated against.[138] And Mr. Chappell testified on four occasions regarding the reasons for his termination, and none of those reasons involve disability.[139] Where Mr. Chappell, himself, does not believe his termination was because of disability discrimination, there is no inference of discrimination for purposes of establishing a prima facie case of discrimination.[140]

---

[133] *Den Hartog v. Wasatch Acad.*, 129 F.3d 1076, 1085 (10th Cir. 1997).

[134] *Id.*

[135] *Id.*

[136] *Supra* Undisputed Facts ¶ 103 at 16.

[137] *Teeter v. Lofthouse Foods*, 691 F. Supp. 2d 1314, 1322 (D. Utah 2010).

[138] *Supra* Undisputed Facts ¶49 at 9.

[139] *Id.* ¶ 85 at 14.

[140] *Beck v. Dahn Corp.*, 145 F.3d 1345 (Table), *3 (10th Cir. 1998).

Mr. Chappell's ADA claim rests on allegations that SkyWest did not pay for his wife's medical procedure and that SkyWest caused a three-week delay in reinstating his insurance. The evidence does not support these allegations. It is undisputed that Mr. Chappell's wife's medical procedure, which occurred after his termination, was not a motivating factor in his termination.[141] It is also undisputed that SkyWest ultimately paid for his wife's medical procedure,[142] negating any inference of discrimination. The alleged delay in insurance occurred after Mr. Chappell's First Termination and after his employment was reinstated.[143] Thus, the adverse action was already reversed at the time of the alleged delay.

Additionally, Mr. Chappell provides no evidence that any decision-maker was motivated by his son's disability. Mr. Chappell's reinstatement–where there was no change in his son's disability status–also undermines any inference that his termination was because of his son's disability. And Mr. Chappell fails to present evidence that the delay in insurance had anything to do with his Second Termination.

Mr. Chappell argues that SkyWest terminated his employment to save money, alleging that Mr. Chappell's insurance was costlier than other employees' because of his son's diabetes. Mr. Chappell requests that judicial notice be taken that diabetes is "extremely expensive." But this vague and relative assertion is not conducive to judicial notice.[144] It remains that Mr. Chappell presents no facts or dispute of material fact to support his cost-savings argument. Mr. Chappell merely speculates that his expensive health insurance may have been a factor in SkyWest's decision to terminate him. But speculation and allegations are not sufficient to defeat

---

[141] *Supra* Undisputed Facts ¶ 96 at 16.

[142] *Id*. ¶ 97 at 16.

[143] *Id*. ¶ 95 at 15.

[144] *Estate of Lockett by and through Lockett v. Fallin*, 841 F.3d 1098, 1111 (10th Cir. 2016).

summary judgment.[145] Because Mr. Chappell fails to establish a prima facie case of associational disability discrimination, SkyWest is entitled to summary judgment on Mr. Chappell's ADA claim.

However, even if Mr. Chappell had established a prima facie case, the undisputed material facts demonstrate that SkyWest had a legitimate, non-discriminatory reason for terminating Mr. Chappell's employment and Mr. Chappell cannot establish pretext. It is undisputed that Mr. Chappell approved the Second Review Board panel members;[146] that the Second Review Board was the final decision-maker regarding Mr. Chappell's Second Termination;[147] and that the Second Review Board had to decide whether to believe Mr. Chappell or Mr. Reber.[148] It is further undisputed that falsifying records is an "immediate" termination basis at SkyWest;[149] that Mr. Chappell admitted it is appropriate for SkyWest to have a zero-tolerance policy regarding untruthfulness from pilots;[150] and that Mr. Chappell admitted it would be appropriate for SkyWest to terminate his employment if the company believed he had falsified records.[151] And it is undisputed that Mr. Chappell had the opportunity to produce evidence to the Second Review Board;[152] that the Second Review Board decided to uphold the decision to terminate Mr. Chappell's employment;[153] and that the official reason for

---

[145] *Anderson*, 477 U.S. at 249.

[146] *Supra* Undisputed Facts ¶ 72 at 12.

[147] *Id*. ¶ 73 at 12.

[148] *Id*. ¶ 74 at 12.

[149] *Id*. ¶ 91 at 15.

[150] *Id*. ¶ 93 at 15.

[151] *Id*. ¶ 92 at 15.

[152] *Id*. ¶ 76 at 12.

[153] *Id*. ¶ 77 at 13.

Mr. Chappell's termination was dishonesty.[154] Therefore, the undisputed material facts demonstrate that SkyWest determined Mr. Chappell had been dishonest and it terminated his employment, which was its prerogative and consistent with its policies.

Mr. Chappell fails to present evidence to create a material dispute that SkyWest's stated reason was pretext for discrimination. Mr. Chappell points to an email from Pennie Hancock to herself.[155] And Mr. Chappell speculates that "the only plausible explanation" for the email was to create evidence to substantiate SkyWest's practice of discriminating against more senior employees as a pretext to saving money.[156] But this speculation is not supported by any other facts in the record about why this email exists; whether it was used for any reason; and if so, how it was used. Mr. Chappell's bald speculation regarding the email is not sufficient to create a reasonable inference or a dispute of fact regarding pretext.[157] The content of the email also do not support Mr. Chappell's speculation. The email is consistent with the undisputed facts that panel members reported to SkyWest Employee Relations that they felt "duped" by Mr. Chappell in his First Review Board;[158] SkyWest subsequently investigated;[159] and SkyWest then terminated Mr. Chappell's employment for dishonesty.[160]

Based on the undisputed material facts, Mr. Chappell's ADA claim fails. Therefore, SkyWest is entitled to summary judgment on Mr. Chappell's ADA Claim.

---

[154] *Id*. ¶ 65 at 11, ¶ 84 at 14.

[155] Plaintiff's Response to Motion for Summary Judgment ("Response") at 28-29, docket no. 58, filed Aug. 2, 2023.

[156] *Id*.

[157] *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1209 (10th Cir. 2007).

[158] *Supra* Undisputed Facts ¶ 62 at 11.

[159] *Id*. ¶ 63 at 11.

[160] *Id*. ¶ 65 at 11, ¶ 84 at 14.

**Mr. Chappell's ADEA claim fails**

In the absence of direct evidence of age discrimination, the *McDonnell Douglas* burden-shifting framework applies to ADEA claims.[161] To establish a prima facie case of age discrimination, a plaintiff must show that: (1) the plaintiff is a member of the class protected by the ADEA; (2) the plaintiff suffered an adverse employment action; (3) the plaintiff was qualified for the position at issue; and (4) the plaintiff was treated less favorably than others not in the protected class.[162] The plaintiff must prove that age was the but-for cause of the employer's adverse action.[163]

It is undisputed that Mr. Chappell, himself, does not believe his termination was discriminatory.[164] This defeats his ability to show that age was the but-for cause of his termination. Additionally, Mr. Chappell's ADEA claim fails at least the fourth element of establishing a prima facie case: Mr. Chappell was not treated less favorably than those similarly situated outside the protected class. Mr. Chappell's Second Termination was for dishonesty.[165] It is undisputed that no other SkyWest pilot has been discharged for the same reasons that Mr. Chappell was in the past 10 years.[166] And Mr. Chappell fails to present facts and evidence to allow reasonable inference or a material dispute that any employee outside the protected class who violated the same policies received more favorable treatment.

To the extent Mr. Chappell seeks to compare himself to Mr. Reber, the comparison is insufficient to defeat summary judgment. Mr. Reber made self-incriminating statements during

---

[161] *Jones v. Okla. City Pub. Schs.,* 617 F.3d 1273, 1279 (10th Cir. 2010).

[162] *Id.*

[163] *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009).

[164] *Supra* Undisputed Facts ¶ 49 at 9.

[165] *Id.* ¶ 65 at 11, ¶ 84 at 14.

[166] *Id.*

his June 17, 2020 review board.[167] Mr. Chappell, on the other hand, maintained that he was unaware of the Occurrence.[168] It is undisputed that Mr. Chappell approved the Second Review Board panel members;[169] that the Second Review Board was the final decision-maker regarding Mr. Chappell's Second Termination;[170] and that the Second Review Board had to decide who to believe between Mr. Chappell and Mr. Reber.[171] The Second Review Board decided to uphold the decision to terminate Mr. Chappell's employment for dishonesty.[172] The Second Review Board panel's good faith business judgment, even if wrong, is not be second-guessed by courts.[173]

Mr. Chappell fails to present any facts with record support to establish age discrimination. Indeed, it is undisputed that Mr. Chappell is not aware of any direct evidence of age discrimination.[174] Therefore, based on the undisputed material facts, Mr. Chappell's ADEA claim fails. SkyWest is entitled to summary judgment on Mr. Chappell's ADA Claim

### Mr. Chappell's ERISA claim fails

To prevail on a claim under § 510 of ERISA, an employee must demonstrate that the defendant had the specific intent to interfere with the employee's ERISA rights.[175] The employee can satisfy this burden by relying on either direct or circumstantial evidence of the defendant's

---

[167] *Id*. ¶ 56 at 10.

[168] *Id*. ¶ 21 at 5, ¶ 40 at 8.

[169] *Id*. ¶ 72 at 12.

[170] *Id*. ¶ 73 at 12.

[171] *Id*. ¶ 74 at 12.

[172] *Id*. ¶ 65 at 11, ¶ 77 at 13, ¶ 84 at 14.

[173] *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1119 (10th Cir. 2007).

[174] *Supra* Undisputed Facts¶ 94 at 15.

[175] *Phelps v. Field Real Estate Co.*, 991 F.2d 645, 649 (10th Cir. 1993).

intent.[176] When indirect evidence of a defendant's intent is proffered, the *McDonnell Douglas* burden-shifting analysis is be applied.[177]

**Mr. Chappell fails to establish ERISA interference**

To establish a prima facie case of interference under § 510 of ERISA, a plaintiff must show: (1) prohibited employer conduct; (2) taken for the purpose of interfering; (3) with the attainment of any right to which the employee may become entitled.[178] No action lies where the alleged loss of rights is a mere consequence, as opposed to a motivating factor, behind the adverse employment action.[179]

Mr. Chappell relies on indirect evidence, so he must establish a prima facie case. His ERISA interference claim fails the first and second elements of establishing a prima facie case: SkyWest did not engage in prohibited conduct for the purpose of interfering with his benefits. Mr. Chappell's ERISA interference claim rests on his allegations that he was a high cost employee because of the expensive health insurance benefits he received for his son's diabetes, and SkyWest terminated his employment to eliminate that expense.[180] However, it is undisputed that SkyWest paid for Mr. Chappell's health insurance for the last fourteen years.[181] Mr. Chappell cannot identify anything that changed around the time of the Occurrence such that SkyWest would no longer be willing to pay for his insurance, and he admits that it is just his assumption.[182] Mr. Chappell is also not aware of any other correlation between his termination

---

[176] *Garratt v. Walker*, 164 F. 3d 1249, 1256 (10th Cir. 1998).

[177] *Godwin v. Sw. Research Inst.*, 237 Fed. App'x 306, 308 (10th Cir. 2007); *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981).

[178] *Maez v. Mountain States Tel. and Tel., Inc.*, 54 F.3d 1488, 1504 (10th Cir. 1995).

[179] *Carter v. Pathfinder Energy Servs., Inc.*, 662 F.3d 1134, 1151 (10th Cir. 2011).

[180] Response at 34; Complaint ¶¶ 84-85 at 14.

[181] *Supra* Undisputed Facts ¶ 99 at 16.

[182] *Id*. ¶¶ 100-101 at 16.

and his benefits.[183] Mr. Chappell's bald assumptions are insufficient to establish SkyWest's intent.[184]

Mr. Chappell's claim fails the second element of establishing a prima facie case for another reason: Mr. Chappell cannot establish that interfering with his rights was a motivating factor in his termination. It is undisputed that Mr. Chappell has no evidence that any decision-makers regarding his termination had access to information on his benefits use.[185] Indeed, it is undisputed that, as far as Mr. Chappell knows, no one at SkyWest has access to his benefits use information.[186] Therefore, Mr. Chappell cannot establish that his benefits use was a motivating factor in his termination.[187]

Mr. Chappell seeks an inference that SkyWest was aware that his family placed a disproportionate financial burden on SkyWest's self-insured health care plan. But Mr. Chappell presents no evidence to allow for such inference to be reasonable.[188]

Based on the undisputed material facts, Mr. Chappell's ERISA interference claim fails. Therefore, SkyWest is entitled to summary judgment on Mr. Chappell's ERISA interference claim.

**Mr. Chappell fails to establish ERISA retaliation**

To establish retaliation under ERISA, a plaintiff must show that the plaintiff was discharged or discriminated against for exercising a right to which the plaintiff is entitled under

---

[183] *Id*. ¶ 102 at 16.

[184] *Card v. Hercules Inc.*, 5 F.3d 545 (Table), *3 (10th Cir. 1993); *Carter*, 662 F.3d at 1151.

[185] *Supra* Undisputed Facts ¶ 103 at 16.

[186] *Id*. ¶ 104 at 16.

[187] *Cunningham v. Adams*, 106 Fed. App'x 693, 698 (10th Cir. 2004).

[188] *Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1226 (10th Cir. 2014).

the provisions of an employee benefit plan.[189] To establish a prima facie case of retaliation, a plaintiff must demonstrate circumstances that give rise to an inference of discrimination.[190] But "[t]he mere knowledge of an employee's medical condition is insufficient by itself to create an inference of retaliation."[191]

It is undisputed that Mr. Chappell has no evidence that any decision-makers, or anyone at SkyWest, had access to information regarding his benefits use.[192] And it is undisputed that SkyWest paid his benefits without issue for fourteen years prior to his termination.[193] Mr. Chappell presents only conclusions devoid of record support to support his ERISA retaliation claim. This is insufficient to defeat summary judgment.[194] The undisputed materials facts do not permit reasonable inference or a dispute of fact regarding retaliation.[195]

Based on the undisputed material facts, Mr. Chappell's ERISA retaliation claim fails. Therefore, SkyWest is entitled to summary judgment on Mr. Chappell's ERISA retaliation claim.

### Mr. Chappell concedes his Rehabilitation Act claim fails

Mr. Chappell concedes that his Rehabilitation Act claim fails.[196] Therefore, SkyWest is entitled to summary judgment on this claim.

---

[189] 29 U.S.C. § 1140.

[190] *Lipe v. Mid-Central, Mfg.*, No. 05-1009-JTM, 2005 WL 3430421, *4 (D. Kan. Dec. 8, 2005).

[191] *Id.* (citing *Phelps v. Field Real Estate*, 991 F.2d 645, 649-50 (10th Cir. 1993)).

[192] *Supra* Undisputed Facts ¶¶ 103-104 at 16; *see also Lipe*, 2005 WL 3430421, *4.

[193] *Id*. ¶ 99 at 16.

[194] *Anderson*, 477 U.S. at 249.

[195] *Lipe*, 2005 WL 3430421, *4.

[196] Response at 35.

**Mr. Chappell's breach of contract claim fails**

To establish a breach of contract, a plaintiff must show: (1) the existence of a contract; (2) performance by the party seeking recovery; (3) breach of the contract by the other party; and (4) damages.[197]

Mr. Chappell's breach of contract claim fails because he cannot show that a contract exists. It is undisputed that SkyWest's Company Policy Manual expressly states that SkyWest's policies do not constitute a contract.[198] It is also undisputed that the Company Policy Manual also states SkyWest employees are employed "at will."[199] Mr. Chappell does not address this language. He instead focuses on SkyWest's Pilot Policy Manual, which he argues creates an individual employment contract by which he could only be terminated for cause.[200] However, it is undisputed that the Pilot Policy Manual states that "[t]his Policy Manual will remain in effect indefinitely."[201] This language further negates the existence of a contract and reaffirms that Mr. Chappell's employment was terminable at will.[202] The undisputed material facts demonstrate that Mr. Chappell did not have an express contract for employment with SkyWest, and Mr. Chappell fails to present sufficient facts and evidence to allow reasonable inference or a material dispute regarding an implied employment contact.

Mr. Chappell's breach of contract claim also fails because even if a contract existed, Mr. Chappell cannot establish that he performed. It is undisputed that the Conduct Rules within the

---

[197] *Beesley v. Hansen*, No. 2:17-cv-00889-JNP-EJF, 2019 WL 1573152, *1 (D. Utah Apr. 11, 2019).

[198] *Supra* Undisputed Facts ¶ 87 at 14.

[199] *Id*. ¶ 86 at 14.

[200] Response at 35-39; Complaint ¶¶ 98-105 at 15.

[201] *Supra* Undisputed Facts ¶ 88 at 15.

[202] *Myles v. Delta Air Lines, Inc.*, No. 89-C-1039W, 1990 WL 264720, *3 (D. Utah 1990) (citing *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1044 (Utah 1989)).

Pilot Policy Manual obligated Mr. Chappell to provide full, complete, and honest information.[203] It is also undisputed that he had been honest was a decision for SkyWest (the Second Review Board) to make.[204] And it is undisputed that the Second Review Board agreed with and upheld SkyWest's Second Termination, determining that Mr. Chappell had not provided honest information.[205] Because the undisputed facts demonstrate that Mr. Chappell failed to comply with the Conduct Rules, Mr. Chappell cannot establish his performance under any employment contract he had with SkyWest.

Mr. Chappell's breach of contract claim further fails because he cannot establish that SkyWest breached any employment contract it had with him. It is undisputed that SkyWest can terminate a pilot's employment for failure to comply with the Pilot Policy Manual's Conduct Rules.[206] And it is undisputed that Mr. Chappell agrees that it is appropriate for SkyWest to take a zero tolerance approach and terminate an employee's employment if SkyWest believes the employee falsified company records.[207] It is also undisputed that it was for SkyWest (the Second Review Board) to decide who to believe between Mr. Chappell and Mr. Reber.[208] SkyWest believed that Mr. Chappell had provided false information and terminated his employment based on this belief.[209] The Second Review Board agreed and upheld the Second Termination.[210] Thus, the undisputed material facts demonstrate that SkyWest was within its rights to terminate Mr.

---

[203] *Supra* Undisputed Facts ¶ 90 at 15.

[204] *Id*. ¶ 74 at 12.

[205] *Id*. ¶ 65 at 11, ¶ 77 at 13, ¶ 84 at 14.

[206] *Id*. ¶ 90 at 15.

[207] *Id*. ¶¶ 92-93 at 15.

[208] *Id*. ¶ 74 at 12.

[209] *Id*. ¶ 65 at 11, ¶ 77 at 13, ¶ 84 at 14.

[210] *Id*. ¶ 77 at 13.

Chappell's employment. And Mr. Chappell fails to present sufficient facts and evidence to support reasonable inference or a material dispute that SkyWest breached any employment contract when terminating Mr. Chappell's employment.

Based on the undisputed material facts, Mr. Chappell's breach of contract claim fails. Therefore, SkyWest is entitled to summary judgment on Mr. Chappell's breach of contract claim.

### Mr. Chappell's negligence claim fails

"[A] party may not merely rely on bald assertions of negligence."[211] "To have a negligence case submitted to the jury, 'a plaintiff must submit sufficient evidence to establish a prima facie case against the defendant.'"[212] To establish a claim of negligence, a plaintiff must show that: (1) the defendant owed the plaintiff a duty; (2) the defendant breached that duty, (3) the breach of duty was the proximate cause of the plaintiff's injury; and (4) the plaintiff in fact suffered injury.[213]

Mr. Chappell's negligence claim fails because he has not shown that SkyWest owed him the duty he alleges. Mr. Chappell alleges that SkyWest owed him a duty to ensure the safety of everyone on board the aircraft. But it is undisputed that, by regulation, it was Mr. Chappell's own duty as a captain to ensure safety on every flight.[214] Mr. Chappell does not address this fact. He instead asserts that the First Officer is equally responsible, and that a pilot only takes responsibility for potential safety issues of which he is aware.[215] Mr. Chappell offers no record

---

[211] *Kitchen v. Cal Gas Co., Inc.*, 821 P.2d 458, 461 (Ct. App. Utah 1991).

[212] *Id*.

[213] *Id*.

[214] *Supra* Undisputed Facts ¶ 3 at 3.

[215] Response at 9.

support for these assertions. And Mr. Chappell produced insufficient facts and evidence to permit a finding that SkyWest owed him the alleged duty.

Mr. Chappell's negligence claim also fails that SkyWest breached any duty it owed to Mr. Chappell. Mr. Chappell alleges that SkyWest breached its alleged duty when the ground crew failed to notify him of the Occurrence.[216] But the undisputed facts demonstrate that Mr. Chappell needed no notification. Mr. Chappell testified that the aircraft came to a halt and that he believed (but did not confirm) that he ran over a drainage grate.[217] It is undisputed that Mr. Chappell used up to 75% thrusters to get the aircraft moving again, and that he felt the aircraft move from side to side during this process.[218] Mr. Chappell knew there was at least an irregularity, but he proceeded with the flight anyway.[219] He should not have done this, according to his own admission that it is never appropriate for a pilot to assume something is safe.[220] Additionally, it is undisputed that Mr. Reber later informed Mr. Chappell of dirt on the aircraft's tire.[221] But Mr. Chappell felt no need to inspect the tires and left the scene without ascertaining the severity of the dirt.[222] On this record of undisputed material facts, Mr. Chappell fails to present sufficient facts and evidence to support a reasonable inference or a material dispute regarding a breach of duty by SkyWest.

Mr. Chappell's breach of contract claim further fails because he cannot establish that the proximate cause of his termination was SkyWest breach of duty. "Proximate cause is 'that cause

---

[216] Complaint ¶ 108 at 16.

[217] *Supra* Undisputed Facts ¶¶ 9-11 at 4.

[218] *Id*. ¶¶ 12-13 at 4.

[219] *Id*. ¶ 14 at 4.

[220] *Id*. ¶ 2 at 3.

[221] *Id*. ¶¶ 16-17 at 4-5.

[222] *Id*. ¶¶ 18-19 at 5.

which, in a natural and continuous sequence, unbroken by any new cause, produced the injury, and without which the injury would not have occurred.'"[223] Mr. Chappell fails to establish proximate cause.

Mr. Chappell argues that absent SkyWest's negligence, the Occurrence would never have happened and he would not have been terminated the first time or the second time.[224] But Mr. Chappell was not discharged the first time for encountering a hazard. He was discharged for his own safety violations, once having encountered a hazard.[225] And Mr. Chappell was discharged the second time for dishonesty.[226] Thus, it is immaterial what SkyWest did or did not do regarding the Occurrence because the Occurrence itself was the cause of Plaintiff's termination.

Additionally, Mr. Chappell's own allegations and the undisputed material facts demonstrate a break in causation. Mr. Chappell alleges that SkyWest breached its duty when the ground crew failed to notify him of the Occurrence.[227] But he also alleges, "[a]s a result of SkyWest's breach, Plaintiff . . . placed the safety of himself, his First Officer, the flight crew, and passengers in danger."[228] It is undisputed that, by regulation, Mr. Chappell was required to and did take full responsibility of the aircraft,[229] and that it is never appropriate for a pilot to assume something is safe.[230] Therefore, the undisputed facts demonstrate that Mr. Chappell's own

---

[223] *Dee v. Johnson*, 286 P.3d 22, 23 (Ct. App. Utah 2012) (quoting *Bunker v. Union Pac. R.R. Co.*, 114 P. 764, 775 (1911)).

[224] Response at 42.

[225] *Supra* Undisputed Facts ¶ 42 at 8.

[226] *Id.* ¶ 65 at 11, ¶ 77 at 13, ¶ 84 at 14.

[227] Complaint ¶ 108 at 16.

[228] *Id.* ¶ 109 at 16.

[229] *Supra* Undisputed Facts ¶ 3 at 3.

[230] *Id.* ¶ 2 at 3.

actions jeopardized safety and broke the causal chain leading to his termination, despite the ground crew's alleged inaction.

Moreover, it is undisputed that SkyWest terminated Mr. Chappell's employment because it determined that he had been dishonest.[231] Mr. Chappell has also stated that he believes this is why his employment ended.[232] It is undisputed that Mr. Chappell approved the Second Review Board panel members; that he had an opportunity to present his case to them; that it was for them to make a credibility determination; and that they were the ultimate decision-makers regarding his termination.[233] Therefore, the Second Review Board's determination to uphold Mr. Chappell's termination based on his dishonesty breaks the causal chain, despite the ground crew's alleged inaction.[234]

Based on the undisputed material facts, Mr. Chappell's negligence claim fails. Therefore, SkyWest is entitled to summary judgment on Mr. Chappell's negligence claim.

---

[231] *Id*. ¶ 65 at 11, ¶ 77 at 13, ¶ 84 at 14.

[232] *Id*. ¶ 85(c) at 14.

[233] *Id*. ¶¶ 72-74 at 12, ¶ 76 at 12.

[234] *Id*. ¶ 65 at 11, ¶¶ 72-74 at 12, ¶¶ 76-77 at 12-13, ¶ 84 at 14.

### ORDER

IT IS HEREBY ORDERED that SkyWest's Motion for Summary Judgment[235] is

GRANTED. Mr. Chappell's claims against SkyWest[236] are DISMISSED with prejudice.

The Clerk is directed to close the case.

Signed November 29, 2023.

BY THE COURT

_____
David Nuffer
United States District Judge

---

[235] Docket no. 54, filed June 28, 2023.

[236] Complaint ¶¶ 58-111 at 9-16.